UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BEAZLEY INSURANCE COMPANY,           )
                                     )   Case No. 2:12-CV-01720-JCM-VCF
                Plaintiff,           )
                                     )
vs.                                  )   **ORDER**
                                     )
AMERICAN ECONOMY INSURANCE           )
COMPANY, *et al.*,                   )
                                     )
                Defendants.          )
_____)

Presently before the court is plaintiff Beazley Insurance Company's ("Beazley") motion for partial summary judgment. (Doc. # 12).[1] Defendant American Economy Insurance Company ("American Economy") responded (doc. # 23),[2] and Beazley replied (doc. # 31).[3]

Also before the court is defendant American Economy's motion for summary judgment.(Doc. # 27).[4] Beazley responded (doc. # 35),[5] American Economy replied (doc. # 41).[6]

---

[1] Beazley also filed a memorandum of points and authorities (doc. # 13), a statement of undisputed facts (doc. # 14), an appendix of exhibits (doc. # 15), a declaration of Kevin Kieffer (doc. # 16), a declaration of Rochanne Keane (doc. # 17), and a request for judicial notice (doc. # 18).

[2] American Economy also filed a declaration of Tammy Russell (doc. # 24), a declaration of Dominica C. Anderson (doc. # 25), and a response to Beazley's statement of undisputed facts (doc. # 26).

[3] Beazley also filed a request for judicial notice (doc. # 32) and a reply to American Economy's response to its statement of undisputed facts (doc. # 33).

[4] American Economy also filed a declaration of Tammy Russell (doc. # 28), a declaration of Dominica C. Anderson (doc. # 29), and a statement of undisputed facts (doc. # 30).

[5] Beazley also filed a response to American Economy's statement of undisputed facts (doc. # 34/38), a request for judicial notice (doc. # 36), and a reply to American Economy's response to its statement of undisputed facts (doc. # 37).

[6] American Economy also filed a declaration of Dominica C. Anderson (doc. # 42) and a reply to Beazley's response to its statement of undisputed facts (doc. # 43).

**James C. Mahan**
**U.S. District Judge**

## I.  Factual background

Both parties to this action, Beazley and American Economy, are insurance companies that issued policies to Otak Nevada, LLC ("Otak"). Otak purchased a professional liability policy from Beazley and a Commercial General Liability "("CGL") policy from American Economy. Following an incident that resulted in litigation involving Otak, Beazley and American Economy contest the coverage required under American Economy's CGL policy.

### A.  Underlying incident and lawsuits

The instant insurance action arises out of underlying lawsuits regarding a three-vehicle accident that took place on December 15, 2006, involving the center median of Cheyenne Avenue. The center median was installed as part of off-site improvements to the Cheyenne Apartments ("project"). Cheyenne Apartments contracted with Otak as an architect for the project. Otak subcontracted with Orion Engineering & Surveying, Inc. ("Orion"). Orion designed the off-site improvements.

On August 21, 2007, Tamilo Afusia, a passenger in a vehicle who sustained injuries during the accident, filed suit against Ronald Phillips, a driver of another vehicle ("*Afusia* action"). (Doc. # 15, Ex. D). The accident was allegedly caused by a deficiency in the median, whereby the "bot dots" were incorrectly aligned with the center of the nose of the median, misguiding Phillips into striking the median. Plaintiffs in the *Afusia* complaint settled with Otak for $210,000. Various cross-complaints and third party complaints arose out of the *Afusia* action, two of which named Otak as a defendant.[7] Only third party claims remain against Otak.

### B.  Third party complaints against Otak

On September 21, 2009, Pacificap Construction Services, LLC ("PCS"), the general contractor on the project, filed a third party complaint against Otak and other third party defendants. PCS then filed an amended complaint alleging negligence, equitable indemnity, contribution, apportionment, and declaratory relief against the third party defendants ("PCS action"). (Doc. # 29, Ex.8). The PCS action alleged that Otak performed construction-related

---

[7] Two actions that named Otak were tendered to American Economy and are at issue in the instant lawsuit. (Doc. # 28, Ex. 2).

**James C. Mahan**
**U.S. District Judge**

- 2 -

activities that were not part of its professional contractual services.

On January 22, 2010, the project developer entities and officers, which consist of Pacificap Properties Group, LLC; Pacific Holdings XXIX, LLC; Chard Rennaker; Jason Rennaker; and Cheyenne Apartments, PPG (collectively, "P&R") filed a motion for leave to file a cross-claim against Otak and other cross-defendants. (Doc. #28, Ex. 2). As a result of Otak's settlement with the plaintiffs in the *Afusia* action, P&R filed a new third party complaint asserting only claims for breach of contract, express indemnity, express contribution, breach of the covenant of good faith and fair dealing, and professional negligence against Otak ("P&R action"). (Doc. # 29, Ex. 5). P&R's claim for professional negligence was later dismissed as a "derivative implied indemnity claim." (*Id.*, Ex. 10).

### C.   Tendering the actions to Beazley and American Economy

Since October 2009, Beazley accepted Otak's tender of the *Afusia* action and has been paying for Otak's defense fees and costs subject to a full reservation of rights. (Doc. # 17, ¶ 2-6). As of October 2012, Beazley has paid $664,408.19 in fees and costs defending Otak in the *Afusia* action, over $267,572.60 of which was incurred after August 2011. Further, Beazley has incurred $99,780.73 in defense fees and costs since October 2012. Beazley argues that it has not received any contribution from American Economy.[8]

On August 10, 2011, Otak's counsel tendered the PCS action (filed by the general contractor) and the P&R action (filed by the project developer entities) to American Economy. On October 25, 2011, the PCS action was dismissed. (Doc. # 29, Ex. 13). On April 24, 2012, American Economy agreed to join Beazley in defending Otak.[9] In its acceptance letter, American Economy cited its "Exclusion-Engineers, Architects or Surveyors of Professional Liability" term (the "professional service exclusion") as potentially limiting its coverage. (Doc. # 15, Ex. O). On November 20, 2012, American Economy paid $23,771.20 to Otak's current counsel representing

---

[8] It appears that Beazley and Otak have recently asked American Economy to re-issue a check for the defense fees associated with the PCS action to be sent to Otak's former counsel.

[9] The court acknowledges that untimeliness of American Economy's response to Otak's tender letter pursuant to NAC §§ 686A.665(1) and 686A.675. Further, the court also acknowledges the untimeliness of American Economy's letter agreeing to join Beazley in defending Otak pursuant to NAC § 686A.675(3).

James C. Mahan
U.S. District Judge

- 3 -

1  what it believed to be its share of the PCS action. (Doc. # 15, Ex. Q). Beazley contends that
2  American Economy has not fulfilled its duty.

     **D.**    **Instant action**

On October 1, 2012, Beazley filed the instant action against American Economy and American States Insurance Company[10] seeking (1) equitable contribution; (2) declaratory relief to establish the duty to defend; and (3) declaratory relief to establish the duty to indemnify. (Doc. # 1).

Beazley filed a motion for partial summary judgment seeking an order from the court adjudicating American Economy's defense obligations to Otak in relation to all the claims made in the *Afusia* action. (Doc. # 13, 20:4-6). Beazley also requests a declaration that American Economy is liable to Beazley for half of the unpaid fees and costs, plus interest, incurred to date by defense counsel in defending Otak in the *Afusia* action from the inception of the *Afusia* action-a total of $358,323.27. (*Id.*, 20:6-10).

American Economy filed a counter motion seeking summary judgment on the ground that it does not owe Beazley contribution for the defense of Otak in the P&R action. (Doc. # 27, 26:2-5).

**II.**    **Legal standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went

---

[10] Liberty Mutual Agency Corporation wholly owns Safeco Corporation, and Safeco Corporation wholly owns defendant American Economy Insurance Company and American States Insurance Company.

James C. Mahan
U.S. District Judge

- 4 -

uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

### III.    Discussion[11]

"An insurance policy is a contract." *Senteney v. Fire Ins. Exch.*, 101 Nev. 654, 655 (1985). A court "should not rewrite contract provisions that are otherwise ambiguous." *Id.*

---

[11] Since the parties' cross-motions for summary judgment turn on the same issues, the court addresses both motions together.

James C. Mahan
U.S. District Judge

- 5 -

Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning. *See United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *see also Int'l Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir.1985). Interpretation of the contract, including whether it is ambiguous, is a matter of law. *Framers Ins. Exchange v. Neal*, 119 Nev. 62, 64 (2003); *Beck Park Apts. v. United States Dep't of Housing*, 695 F.2d 366, 369 (9th Cir. 1982). In Nevada, contractual construction is a question of law and "suitable for determination by summary judgment." *Ellison v. Cal. State Auto Ass'n*, 106 Nev. 601, 603 (1990).

### A. Nevada insurance law[12]

Generally, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995). "Insurance policies are contracts to which ordinary rules of contractual interpretation apply." *Maryland Casualty Co. v. Nationwide Ins. Co.*, 65 Cal.App.4th 21, 28 (1998). The court should "look first to the language of the contract in order to ascertain its plain meaning . . . ." *Waller*, 11 Cal.4th at 18. "A policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable." *Id.* (quotations omitted). "Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." *Kazi v. State Farm Fire and Cas. Co.*, 24 Cal.4th 871, 879 (2001).

"An insurer must defend any action that asserts a claim potentially seeking damages within the coverage of the policy." *Maryland Casualty Co.*, 65 Cal.App.4th at 32 (quoting *Montrose Chemical Corp. v. Super. Ct.*, 6 Cal.4th 287, 295 n.3 (1993)); *see also Buss v. Sup. Court*, 16 Cal.4th 35, 46 n.10 (1997) (holding that the duty to defend is dependent on "at least potential coverage."). "[T]he duty to defend may exist even where coverage is in doubt and ultimately does not develop . . . ." *Kazi*, 24 Cal.4th at 879; *see also Quan v. Truck Ins. Exch.*, 67 Cal.App.4th 583 (1998).

"[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and

---

[12] "In the context of interpreting insurance policy terms, the Nevada Supreme Court has often looked to persuasive precedent from other jurisdictions, especially California." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F.Supp.2d 1223, 1235 (D.Nev. 2010).

James C. Mahan
U.S. District Judge

- 6 -

kinds of risks covered by the policy." *Waller*, 11 Cal.4th at 19. "[W]here there is no potential for coverage, there is no duty to defend." *Infinet Mktg. Servs., Inc. v. Am. Motorist Ins. Co.*, 150 Cal.App.4th 168, 177 (2007); *see also Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268 (9th Cir. 2010) (holding that the duty to defend does not exist where there is no legal theory or facts in the underlying complaint to potentially give rise to coverage) (citing *Gunderson v. Fire Insurance Exch.*, 37 Cal.App.4th 1106 (1995)).

### B. Duty to defend

"[A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 985 (2008) (citing *Waller*, 11 Cal.4th at 19; *Montrose Chemical Corp.*, 6 Cal.4th at 295). "Nevada has adopted the 'complaint rule,' pursuant to which an insurer that seeks to avoid its duty to defend its insured may only do so by comparison of the complaint in the underlying litigation to the terms of the policy." *OneBeacon Ins. Co. v. Probuilders Specialty Ins. Co.*, No. 3:09–CV–36–ECR–RAM, 2009 WL 2407705, at *8 (D. Nev. 2009) (citing *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 120 Nev. 678, 686 (2004)).

Beazley argues that the various complaints in the *Afusia* action trigger American Economy's duty to defend–*i.e.*, a suit alleging bodily injury caused by an occurrence, and, as a result, American Economy has a duty to defend. Beazley argues that in multiparty actions, such as this one, the allegations in the underlying complaint alone can create a duty to defend. *See, e.g.*, *McClain v. Nat'l Fire & Marine Ins. Co.*, 2:05-CV-00706-LRH-RJJ, 2008 WL 5501105 (D. Nev. 2008). In *McClain*, a dispute arose over whether an insurance company had a duty to defend an insured who had been named in a third party complaint. *Id.* at *2-3. The court held that in determining whether the insurance company had a duty to defend, the relevant complaint was the underlying complaint.

The court finds the circumstances in the instant case more complex than those presented in *McClain*. In *McClain*, two co-defendants filed a third party complaint against the insured, and while all the allegations of the third party complaint are not ascertainable from the court's order;

it can be implied that the allegations of the third party complaint did not restrict the insurance company's duty to defend the insured.[13]

Here, however, the facts and allegations in the P&R third party complaint are specifically limited to activities arising from Otak's professional services pursuant to its contracts with Cheyenne Apartments and Orion.[14] These claims were limited in response to Otak's good faith settlement that extinguished liability for derivative implied indemnity claims. The court finds Beazley's proposition that the duty to defend should arise from an underlying complaint, that does not name Otak, to require an analytical leap which the court declines to take.[15]

That is not to say that the underlying complaint can never be the relevant complaint; however, here, the P&R third party complaint specifically limits the type of conduct for which Otak may be liable–and in turn necessarily limits American Economy's coverage under its policy. Further, based on the plain language of American Economy's policy, the duty to defend arises only when there has been a lawsuit that alleges damages against the insured.[16] Provided the narrowness of the P&R third party complaint, the court does not find *McClain* persuasive here.

Having found that the relevant complaint to be the P&R third party complaint and that this complaint triggers American Economy's duty to defend, the court turns to whether any

---

[13] The underlying complaint alleged that the two co-defendants negligently constructed the project, which resulted in property damage, and the two co-defendants "in turn filed a third-party complaint against [the insured] seeking indemnification and alleging that the damages incurred [ ] 'were proximately caused by the . . . negligent and careless conduct of [the insured]." *McClain*, 2008 WL 5501105, at *4 (citation omitted).

[14] The court notes that Otak is named a defendant in two third party complaints; however, since American Economy does not dispute its obligation to defend Otak in the PCS action, the court addresses only whether American Economy has a duty to defend Otak based on the allegations contained in the P&R action third party complaint.

[15] Other courts in this district have also found the operative complaint to be that which names the insured as a defendant. *See, e.g.*, *OneBeacon Ins. Co.*, 2009 WL 2407705, at *8 ("The relevant complaint for determining whether ProBuilders had a duty to defend *is the complaint filed against* Arndell Construction in the Hidden Meadows litigation.") (emphasis added). While *OneBeacon* did not involve a third party complaint; the *OneBeacon* court's determination as to the relevant complaint was based on which complaint *named the insured as a defendant*.

[16] American Economy's CGL states:
We will pay those sums that the insured becomes legally obligated to pay as damages of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
(Doc. # 28, Ex. 3, 18, § 1.a.).

exclusions in American Economy's policy limit its coverage.

### C. Professional services exclusion

American Economy's professional services exclusion reads as follows:

> This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
> 1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> 2. Supervisory, inspection, architectural or engineering activities.

(Doc. # 15, Ex. L).

The Nevada Supreme Court has held that "[a]n insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." *Neal*, 119 Nev. at 64. Courts examine the language of a policy "from the perspective of 'one not trained in law' and give plain and ordinary meaning to the terms." *Id.* Courts will not rewrite unambiguous language in policies, but any actual ambiguities "are to be resolved in favor of the insured." *Id.* at 65. Nevada law requires that courts enforce unambiguous policy provisions that exclude coverage. *See Senteney*, 101 Nev. at 655.

However, "if an insurer wishes to exclude coverage by virtue of an exclusion in its policy, it must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case." *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 14 (2011).

Beazley argues that the professional services exclusion does not relieve American Economy from its duty to defend Otak where: (1) the alleged wrongdoing is related to both professional services and non-professional services; and (2) the alleged wrongdoing is acts of

ordinary negligence.

### (1) Alleged professional & non-professional wrongdoing

Beazley argues that it was alleged in two complaints in the *Afusia* action that Otak "was responsible for the negligent construction, design, maintenance, planning, inspection, improving and/or supervision of the roadway, markings, lighting and 'bot dots' on Cheyenne Avenue, and for the provision of defective products that were unreasonably dangerous." (Doc. # 13, 14:1-5). These non-professional allegations against Otak were made in an amended complaint of a passenger who sustained permanent bodily injuries as a result of the December 15, 2006, accident (*see* doc. # 15, Ex. C),[17] and in the PCS third party complaint (*see id.*, Ex. I).

However, the passenger's amended complaint was not tendered to American Economy because Otak previously settled this lawsuit (*see* doc. # 28, Ex. 2) and American Economy has accepted the defense of Otak in the PCS action, which is now dismissed. Thus, all the non-professional allegations–construction, maintenance, improving, and supplying products that allegedly caused the accident–are no longer alleged against Otak. Although there were allegations of non-professional wrongdoing against Otak, the court finds that, given the present circumstances, American Economy did not improperly obviate its duty to defend Otak.

### (2) Alleged ordinary negligence

Beazley contends that the PCS action and the P&R action "repeatedly allege that Otak failed to catch the open and obvious danger of the misaligned median in violation of its contractual duty." (Doc. # 13, 15:1-2). Beazley focuses on the "open and obvious" dangerous condition alleged in the P&R action third party complaint to establish that American Economy has a duty to defend Otak. (Doc. # 14, Nos. 18, 23 & 42). Beazley cites several cases for the proposition that the professional services exclusion is inapplicable when there is an allegation "of failure to adequately monitor or supervise the work being done by others" because it is simple ordinary negligence. (Doc. # 13, 15:3-16:5).

But the cases cited by Beazley describe circumstances in which the instrumentality that

---

[17] The passenger is Christopher Watkins.

caused the harm was beyond the scope of the work for which the insured was responsible.[18] Applying the same standard Beazley cites for determining whether an act constitutes a professional service–"the nature of the particular service allegedly negligently performed (or not performed), and whether that service is recognized as requiring specialized training or expertise . . . ," *Cochran v. B.J. Servs. Co.*, 302 F.3d 499, 506 (5th Cir. 2002)–the court finds that the conduct alleged in the P&R action third party complaint to fall squarely inside the professional services exclusion.

The P&R action is specifically limited to activities arising from Otak's professional services pursuant to its contracts with Cheyenne Apartments and Orion. American Economy relies on *Superpoweraffiliates.com, Inc. v. Transp. Ins. Co.*, 322 F. App'x 517, 518 (9th Cir. 2009) (unpublished), for the proposition that liability for claims arising from the performance of contractual services are expressly excluded by the professional services exclusion. While, the unpublished Ninth Circuit opinion did not expressly state that the claims were excluded because they arose out of the contract, the logical implication is persuasive. That is, conduct for which an entity is required to do by contract is, *inter alia*, a professional service.

The P&R action third party complaint is centered on Otak's failure in providing its architectural services (*see* doc. # 29, Ex. 5, ¶ 16); this is vastly different from the cases cited by Beazley in which the insured was alleged to have engaged in wrongful conduct that was outside the scope of services for which the insured was hired/contracted for. Here, the P&R action third party complaint alleges that Otak had a contractual duty to warn Cheyenne Apartments of defects and deficiencies and that Otak's failure to perform this professional service resulted in damage to plaintiff.

/ / /

/ / /

---

[18] *See, e.g.*, *Cochran v. B J Servs. Co.*, 302 F.3d 499, 506 (5th Cir. 2002) (an insured contracted to monitor the progress of others and an employee who was injured from removing a cement head on a drilling rig); *DiBeneditto v. Med. Protective Co.*, 3 Fed. Appx. 483, 485-487 (6th Cir. 2001) (an insured, a doctor, and alleged sexual harassment); *Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (insured, a hospital, and negligent failure to maintain a patient's window to prevent escape and subsequent suicide); *D'Antoni v. Sara Mayo Hosp.*, 144 So.2d 643, 646-47 (La. Ct. App. 1962) (an insured, a hospital, and negligent failure to raise the side rail on patient's bed).

1    Last, while the court acknowledges that consolidated nature of the *Afusia* action, the
2 possibility that an ordinary negligence cause of action may be brought against Otak is insufficient
3 to implicate American Economy's duty to defend. *See, e.g., Gunderson v. Fire Insurance*
4 *Exchange* 37 Cal.App.4th 1106, 1114 (1995) ("An insured may not trigger the duty to defend by
5 speculating about extraneous facts regarding potential liability or ways in which the third party
6 claimant might amend its complaint at some future date.").

7    Because the American Economy policy includes clear and unambiguous language, subject
8 to only one interpretation, that clearly excludes the damage here, American Economy's denial of
9 coverage for the P&R action is proper pursuant to its professional services exclusion.[19]

### IV.    Conclusion

The court notes that the parties made several arguments and cited several cases not discussed above. The court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of these motions.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Beazley Insurance Company's motion for partial summary judgment (doc. # 12) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant American Economy Insurance Company's motion for summary judgment (doc. # 27) be, and the same hereby is, GRANTED.[20]

///
///
///
///

---

[19] The court does not address the contractual liability exclusion because it would, at most, only apply to two causes of action that remain pending against Otak. Thus, even if the contractual liability exclusion applied, it alone would not absolve American Economy of its duty to defend.

[20] Because the court finds that American Economy does not have a duty to defend Otak in the P&R action, the court does not make any judgment as to whether American Economy would owe pre-judgment interest pursuant to NRS § 99.040.

**James C. Mahan**
**U.S. District Judge**

- 12 -

IT IS FURTHER ORDERED that American Economy does not owe Beazley contribution for the defense of Otak in the P&R action.[21]

DATED this 20th day of May, 2013.

_____
UNITED STATES DISTRICT JUDGE

---

[21] This case remains open as to American States Insurance Company which issued an excess policy to Otak that was not at issue in these competing motions. Further, the case remains open to any issues of coverage by American Economy beyond those adjudicated in the instant order.